**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| INNOVATIONS IN MEMORY LLC,<br><br>Plaintiff,<br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>Defendant. | Case No. 2:26-cv-918<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff Innovations In Memory LLC ("Plaintiff" or "IIM") makes the following allegations against Hewlett Packard Enterprise Company ("Defendant" or "HPE"):

**INTRODUCTION**

1. This complaint arises from HPE's unlawful infringement of the following United States patents owned by Plaintiff concerning improvements in memory storage devices and systems: United States Patent Nos. 8,452,929 ("the '929 Patent"), 9,304,714 ("the '714 Patent"), 8,285,961 ("the '961 Patent"), 7,672,226 ("the '226 Patent"), and 8,214,608 ("the '608 Patent") (collectively, the "Asserted Patents").

**PARTIES**

2. Plaintiff Innovations In Memory LLC is a Delaware limited liability company, with its principal place of business at 5 Hilldale Lane, Sands Point, NY 11050. IIM is the sole owner by assignment of all right, title, and interest in the Asserted Patents, including the right to recover

for past, present, and future infringement. IIM owns an extensive patent portfolio that was developed by Violin Memory Inc. ("Violin") over the course of its 15 years of pioneering work in flash memory storage solutions, as well as the patent assets of GridIron Systems and Xiotech Corporation, which were both acquired by Violin. IIM's portfolio includes over 300 U.S. and worldwide patents and patent applications.

3. Defendant Hewlett Packard Enterprise Company is a corporation organized under the laws of Delaware, with its principal place of business at 1701 East Mossy Oaks Road, Spring, Texas. HPE is registered to do business in the State of Texas and may be served through its registered agent CT Corporation System 1999 Bryan St., Ste. 900 Dallas, Texas, 75201.

## BACKGROUND

### A. Violin Memory

4. Violin was founded in 2005 by Jon Bennett and Donpaul Stephens to focus on creating all flash storage solutions. Violin raised over $300 Million in private and public capital and invested it in its R&D and product development. Violin went public in 2013 and was valued at over $800M. At different times Violin acquired other innovators in the flash storage field, such as Xiotech Corporation and GridIron Systems, along with their key personnel and patents. In 2016, Violin declared bankruptcy and its patent assets were eventually sold.

### B. IIM and Dr. Fatih Ozluturk

5. In 2021, IIM purchased Violin's patent portfolio, which covers data storage systems, including hybrid and all-flash storage arrays, SSDs (solid state storage devices), use of RAID (redundant array of independent disks) and other architectures in such systems, controllers for managing such systems, cache management, and other related key inventions. IIM's portfolio

is significant in scope (over 300 U.S. and worldwide patents and patent applications) and widely infringed in the marketplace.

6. IIM was founded by Dr. Fatih Ozluturk, a Ph.D. in Electrical Engineering, distinguished engineer, inventor on nearly 450 issued U.S. patents and numerous pending patent applications, making him one of the most prolific patentees living in the United States.

7. Dr. Ozluturk has a history of inventing solutions that have proved to be significant in multiple generations of wireless technologies, including 3G and 4G LTE, arising primarily out of his work for wireless pioneer InterDigital. Some have remarked that "Fatih's groundbreaking inventions span multiple generations of wireless technology and directly benefit the entire wireless ecosystem and billions of consumers globally." Ex. 1 (https://www.businesswire.com/news/home/20110418006517/en/%20InterDigital-Honors-Dr.-Fatih-Ozluturk-Inventor-Named). Dr. Ozluturk also obtained dozens of patents for his inventions related to smartphone cameras, which are now licensed to a great portion of the industry.

8. Dr. Ozluturk is also experienced in patent licensing. For example, Dr. Ozluturk successfully licensed his own digital imaging patents to over 12 of the largest mobile handset and camera companies around the world. Dr. Ozluturk has also successfully licensed IIM's portfolio to several of the largest memory storage manufacturers in the world.

**C. IIM's Pre-Suit Communications With HPE**

9. On August 11, 2022, IIM sent HPE a letter indicating that certain HPE products needed a license to practice certain IIM patents, including but not limited to the '929, '226, and '608 Patents. Ex. 2 ("First Notice"). IIM explained that its "patent portfolio currently includes nearly 300 US and foreign patents" and that "Hewlett Packard Enterprise's ('HPE') storage products indicates that HPE needs a license to the Violin portfolio as its products practice the

patented inventions in the Violin portfolio." *Id.* at 1. IIM noted that its "analysis is continuing, and additional HPE products and product lines may need a license to the above US patents, additional US patents, and foreign counterparts." *Id.* at 2. IIM requested that the parties arrange a call to discuss a potential license.

10. On August 2, 2024, IIM sent HPE another letter following up on the First Notice, reiterating that certain HPE products needed a license to practice certain IIM patents, and further identifying the '714 and '961 Patents in addition to the '929, '226, and '608 Patents identified in the First Notice. Ex. 3 ("Second Notice"). IIM also clarified the scope of infringing products, including the accused HPE Alletra storage products and ProLiant servers. IIM again explained that HPE needed a license, and again requested a call to discuss a potential license.

11. On January 17, 2025, IIM sent HPE yet another letter following up on the First Notice, again reiterating HPE's need for a license to practice certain IIM patents, identifying all of the Asserted Patents. Ex. 4 ("Third Notice"). IIM again explained that HPE needed a license, and again requested a call to discuss a potential license.

12. On January 28, 2025, HPE acknowledged receipt of the Second and Third Notices, claiming that it "respects intellectual property rights and tries to work with third parties to ensure that the IP rights of all parties are respected," purporting that it had "not been able to locate a copy of" the First Notice and that the Second Notice was somehow "not received … until earlier" in January 2025. Ex. 5. HPE otherwise provided no substantive response to the allegations in the First, Second, or Third Notices.

## JURISDICTION AND VENUE

13. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14. This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and/or selling products that infringe the Asserted Patents.

15. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Defendant has transacted business in this District and has committed acts of direct infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the Asserted Patents. For example, Defendant has regular and established places of business in this District, including at 3001 Dallas Parkway, Frisco, TX 75034 and 6080 Tennyson Parkway, Suite 400, Plano, TX 75024.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,452,929

16. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

17. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 8,452,929, titled

"Method and system for storage of data in non-volatile media." The '929 Patent was duly and legally issued by the United States Patent and Trademark Office on May 28, 2013. A true and correct copy of the '929 Patent is attached as Exhibit 6.

18. On information and belief, HPE has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation HPE's Alletra Storage 5000 and Alletra Storage 6000 systems built on the "Cache Accelerated Sequential Layout (CASL) architecture" ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '929 Patent. Identification of the Accused Products and asserted claims will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order.

19. The Accused Products satisfy all claim limitations of one or more claims of the '929 Patent. A claim chart comparing independent claim 35 of the '929 Patent to exemplary Accused Products is attached as Exhibit 7.

20. HPE obtained notice of the '929 Patent as of at least April 7, 2017when it was cited as prior art to U.S. Patent App. No. 14/785,071, which issued as U.S. Patent No. 9,934,085 to Hewlett Packard Enterprise Development LP. The '929 Patent (or a related foreign application) was also cited as prior art in connection with U.S. Patent App. Nos. 15/305,286 and 14/396,324 (or their foreign counterparts). Those applications issued as U.S. Patent Nos. 10,073,649 and 10,467,116 respectively, and were assigned to Hewlett Packard Enterprise Development LP. On information and belief, Hewlett Packard Enterprise Development LP is a subsidiary of HPE.

21. On August 11, 2022, IIM sent HPE the First Notice, which expressly identified the '929 Patent. On August 2, 2024, IIM sent HPE the Second Notice, which also expressly identified the '929 Patent and identified the accused Alletra storage products as requiring a license.

On January 17, 2025, IIM sent HPE the Third Notice, which again expressly identified the ’929 Patent. The First, Second, and Third Notices all explained that HPE needed a license and requested a call to discuss a potential license.

22. HPE knowingly and intentionally induces infringement of one or more claims of the ’929 Patent in violation of 35 U.S.C. § 271(b). As of August 11, 2022 (or at least as of the time of the filing and service of this complaint), HPE obtained knowledge of the ’929 Patent and the infringing nature of the Accused Products. Despite this knowledge of the ’929 Patent, HPE continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 7) to use the Accused Products in ways that directly infringe the ’929 Patent. For example, HPE advertises that its “CASL architecture is organized into multiple layers that work together” and uses “multistage checksums” “across multiple stages of the I/O path,” where the “checksum[s] enable[] the platform to detect and recover from insidious error conditions, including block corruption, lost writes, misdirected writes, and misdirected reads. *See* Ex. 8 (https://www.hpe.com/psnow/doc/a50002410enw). HPE also instructs its customers and end users on how to configure and use the Accused Products in an infringing manner, including through setting CASL policies. *See id.*; *see also* Ex. 9 (https://www.hpe.com/psnow/doc/a50004287enw.pdf?jumpid=in_pdfviewer-psnow). HPE provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. HPE also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the ’929 Patent, thereby specifically intending for and inducing its customers to infringe the ’929 Patent through the customers’ normal and customary use of the Accused Products.

23. HPE also infringed, and continues infringing, one or more claims of the '929 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '929 Patent, are especially made or adapted to infringe the '929 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. As of August 11, 2022 (or at least as of the time of filing and service of this complaint), HPE obtained knowledge of the '929 Patent and the infringing nature of the Accused Products. HPE has been, and currently is, contributorily infringing the '929 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the identified hardware and/or software components and functionality in HPE's Alletra Storage 5000 and Alletra Storage 6000 systems constitute a material part of the inventions claimed in the '929 Patent, are especially made or adapted to infringe the '929 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 7.

24. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, HPE has injured Plaintiff and is liable for infringement of the '929 Patent pursuant to 35 U.S.C. § 271.

25. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the '929 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the '929 Patent during the relevant time period or were not required to mark during the relevant time period.

26. As described above, HPE obtained knowledge of IIM's patent portfolio and that certain HPE products infringe IIM's patents as of at least August 11, 2022, but has not ceased its

infringing activities. HPE's infringement of the '929 Patent has been and continues to be willful and deliberate. HPE also has knowledge of the '929 Patent by way of this complaint and, to the extent it does not cease its infringing activities, its infringement is and continues to be willful and deliberate.

27. As a result of HPE's direct and indirect infringement of the '929 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for HPE's infringement, but in no event less than a reasonable royalty for the use made of the invention by HPE, together with interest and costs as fixed by the Court.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 9,304,714

28. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

29. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 9,304,714, titled "LUN management with distributed RAID controllers." The '714 Patent was duly and legally issued by the United States Patent and Trademark Office on April 5, 2016. A true and correct copy of the '714 Patent is attached as Exhibit 10.

30. On information and belief, HPE has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation HPE's Alletra Storage MP B10000 with "Express Layout" functionality that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '714 Patent. Identification of the Accused Products and asserted claims will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order.

31. The Accused Products satisfy all claim limitations of one or more claims of the '714 Patent. A claim chart comparing independent claim 12 of the '714 Patent to exemplary Accused Products is attached as Exhibit 11.

32. On August 11, 2022, IIM sent HPE the First Notice. On August 2, 2024, IIM sent HPE the Second Notice, expressly identifying the '714 Patent and the accused Alletra products as requiring a license. On January 17, 2025, IIM sent HPE the Third Notice, again expressly identifying the '714 Patent. All of the First, Second, and Third Notices explained that HPE needed a license and requested a call to discuss a potential license.

33. HPE knowingly and intentionally induces infringement of one or more claims of the '714 Patent in violation of 35 U.S.C. § 271(b). As of August 2, 2024 (or at least as of the time of the filing and service of this complaint), HPE obtained knowledge of the '714 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '714 Patent, HPE continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 11) to use the Accused Products in ways that directly infringe the '714 Patent. For example, HPE advertises that its "Express Layout" functionality "allows each SSD to be actively accessed by all controllers simultaneously. This allows the nodes to use capacity from every drive to build logical capacity." *See* Ex. 12 (https://www.hpe.com/psnow/doc/a50008302enw). HPE also advertises that the Accused Products "leverage[] a parallel, all-NVMe, multi-node, all-active architecture with I/O processing active on all media, controllers, and host ports." *See* Ex. 13 (https://community.hpe.com/t5/around-the-storage-block/new-release-hpe-greenlake-for-block-storage-with-hpe-alletra/ba-p/7206517). HPE also instructs its customers and end users on how to configure and use the Accused Products in an infringing manner, including by providing

functionality that allows " [u]ser [to] create[] VVs … [that] draw space from that pool as needed, allocating space on demand in small increments for each controller node." *See*, *e.g.*, *id.*; *see also* Ex. 12 (https://www.hpe.com/psnow/doc/a50008302enw). HPE provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. HPE also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '714 Patent, thereby specifically intending for and inducing its customers to infringe the '714 Patent through the customers' normal and customary use of the Accused Products.

34. HPE has also infringed, and continues to infringe, one or more claims of the '714 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '714 Patent, are especially made or adapted to infringe the '714 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. As of August 2, 2024 (or at least as of the time of filing and service of this complaint), HPE obtained knowledge of the '714 Patent and the infringing nature of the Accused Products. HPE has been, and currently is, contributorily infringing the '714 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the identified hardware and/or software components and functionality in HPE's Alletra MP B10000 constitute a material part of the inventions claimed in the '714 Patent, are especially made or adapted to infringe the '714 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 11.

35. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, HPE has injured Plaintiff and is liable for infringement of the '714 Patent pursuant to 35 U.S.C. § 271.

36. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the ’714 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the ’714 Patent during the relevant time period or were not required to mark during the relevant time period.

37. As described above, HPE obtained knowledge of IIM’s patent portfolio and that certain HPE products infringe IIM’s patents as of at least August 2, 2024, but has not ceased its infringing activities. HPE’s infringement of the ’714 Patent has been and continues to be willful and deliberate. HPE also has knowledge of the ’714 Patent by way of this complaint and, to the extent it does not cease its infringing activities, its infringement is and continues to be willful and deliberate.

38. As a result of HPE’s direct and indirect infringement of the ’714 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for HPE’s infringement, but in no event less than a reasonable royalty for the use made of the invention by HPE, together with interest and costs as fixed by the Court.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,285,961

39. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

40. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 8,285,961, titled “Dynamic performance virtualization for disk access.” The ’961 Patent was duly and legally

issued by the United States Patent and Trademark Office on October 9, 2012. A true and correct copy of the ’961 Patent is attached as Exhibit 14.

41. On information and belief, HPE has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation its XP8 storage systems with “Smart Tiers” functionality, that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the ’961 Patent. Identification of the Accused Products and asserted claims will be provided in Plaintiff’s infringement contentions disclosed pursuant to the Court’s scheduling order.

42. The Accused Products satisfy all claim limitations of one or more claims of the ’961 Patent. A claim chart comparing independent claim 1 of the ’961 Patent to exemplary Accused Products is attached as Exhibit 15.

43. On August 11, 2022, IIM sent HPE the First Notice. On August 2, 2024, IIM sent HPE the Second Notice, expressly identifying the ’961 Patent. On January 17, 2025, IIM sent HPE the Third Notice, again expressly identifying the ’961 Patent. The First, Second, and Third Notices all explained that HPE needed a license and requested a call to discuss a potential license.

44. HPE knowingly and intentionally induces infringement of one or more claims of the ’961 Patent in violation of 35 U.S.C. § 271(b). As of August 2, 2024 (or at least as of the time of the filing and service of this complaint), HPE obtained knowledge of the ’961 Patent and the infringing nature of the Accused Products. Despite this knowledge of the ’961 Patent, HPE continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 15) to use the Accused Products in ways that directly infringe the ’961 Patent. For example, HPE advertises that the Accused Products include “Smart Tiers,” which “simplifies storage administration by automatically

optimizing data placement in 1, 2, or 3 tiers of storage that can be defined and used within a single virtual volume." *See* Ex. 16 (https://support.hpe.com/hpesc/public/docDisplay?docId=dp00003199en_us&docLocale=en_US). HPE also instructs its customers and end users on how to configure and use the Accused Products in an infringing manner, including through using "tiering policies." *See, e.g.*, *id.*; *see also* Ex. 17 (https://www.hpe.com/psnow/doc/a00073544enw.pdf?jumpid=in_pdfviewer-psnow). HPE provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. HPE also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '961 Patent, thereby specifically intending for and inducing its customers to infringe the '961 Patent through the customers' normal and customary use of the Accused Products.

45. HPE has also infringed, and continues to infringe, one or more claims of the '961 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '961 Patent, are especially made or adapted to infringe the '961 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. As of August 2, 2024 (or at least as of the time of filing and service of this complaint), HPE obtained knowledge of the '961 Patent and the infringing nature of the Accused Products. HPE has been, and currently is, contributorily infringing the '961 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the identified hardware and/or software components and functionality in HPE's XP8 storage systems constitute a material part of the inventions claimed in the '961 Patent, are especially made or adapted to infringe the '961 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 15.

46. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, HPE has injured Plaintiff and is liable for infringement of the ’961 Patent pursuant to 35 U.S.C. § 271.

47. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the ’961 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the ’961 Patent during the relevant time period or were not required to mark during the relevant time period.

48. As described above, HPE obtained knowledge of IIM’s patent portfolio and that certain HPE products infringe IIM’s patents as of at least August 2, 2024, but has not ceased its infringing activities. HPE’s infringement of the ’961 Patent has been and continues to be willful and deliberate. HPE also has knowledge of the ’961 Patent by way of this complaint and, to the extent it does not cease its infringing activities, its infringement is and continues to be willful and deliberate.

49. As a result of HPE’s direct and indirect infringement of the ’961 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for HPE’s infringement, but in no event less than a reasonable royalty for the use made of the invention by HPE, together with interest and costs as fixed by the Court.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 7,672,226

50. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

51. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 7,672,226, titled "Method, apparatus and program storage device for verifying existence of a redundant fibre channel path." The '226 Patent was duly and legally issued by the United States Patent and Trademark Office on March 2, 2010. A true and correct copy of the '226 Patent is attached as Exhibit 18.

52. On information and belief, HPE has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation HPE's Alletra 9000 storage systems with "Persistent Port" functionality ("Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '226 Patent. Identification of the Accused Products and asserted claims will be provided in Plaintiff's infringement contentions disclosed pursuant to the Court's scheduling order.

53. The Accused Products satisfy all claim limitations of one or more claims of the '226 Patent. A claim chart comparing independent claim 18 of the '226 Patent to exemplary Accused Products is attached as Exhibit 19.

54. HPE obtained notice of the '226 Patent as of at least January 25, 2017 through the Patent Office's non-final Rejection identifying the application that issued as the '226 Patent as prior art to U.S. Patent App. 14/438,624, which issued as U.S. Patent No. 9,830,239 to Hewlett Packard Enterprise Development LP. On information and belief, Hewlett Packard Enterprise Development LP is a subsidiary of HPE.

55. On August 11, 2022, IIM sent HPE the First Notice, which expressly identified the '226 Patent. On August 2, 2024, IIM sent HPE the Second Notice, which also expressly identified the '226 Patent. On January 17, 2025, IIM sent HPE the Third Notice, which again

expressly identified the '226 Patent. The First, Second, and Third Notices all explained that HPE needed a license and requested a call to discuss a potential license.

56. HPE knowingly and intentionally induces infringement of one or more claims of the '226 Patent in violation of 35 U.S.C. § 271(b). As of August 11, 2022 (or at least as of the time of the filing and service of this complaint), HPE obtained knowledge of the '226 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '226 Patent, HPE continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 19) to use the Accused Products in ways that directly infringe the '226 Patent. For example, HPE advertises that its "Persistent Port" functionality "minimizes I/O disruption during a storage system port loss_sync event triggered by the loss of storage system port connectivity to the fabric." *See* Ex. 20 (https://support.hpe.com/hpesc/public/docDisplay?docId=sd00001342en_us&page=GUID-37956C9E-CFEB-4375-B5AA-E98000A38831.html). HPE also instructs its customers and end users on how to configure and use the Accused Products in an infringing manner, including through enabling "Persistent Port" functionality by default. *See*, *e.g.*, Ex. 21 (https://support.hpe.com/hpesc/public/docDisplay?docId=a00113783en_us&docLocale=en_US&page=setsys.html). HPE provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. HPE also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '226 Patent, thereby specifically intending for and inducing its customers to infringe the '226 Patent through the customers' normal and customary use of the Accused Products.

57. HPE has also infringed, and continues to infringe, one or more claims of the ’226 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the ’226 Patent, are especially made or adapted to infringe the ’226 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. As of August 11, 2022 (or at least as of the time of filing and service of this complaint), HPE obtained knowledge of the ’226 Patent and the infringing nature of the Accused Products. HPE has been, and currently is, contributorily infringing the ’226 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the identified hardware and/or software components and functionality in HPE’s Alletra 9000 constitute a material part of the inventions claimed in the ’226 Patent, are especially made or adapted to infringe the ’226 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 19.

58. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, HPE has injured Plaintiff and is liable for infringement of the ’226 Patent pursuant to 35 U.S.C. § 271.

59. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the ’226 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the ’226 Patent during the relevant time period or were not required to mark during the relevant time period.

60. As described above, HPE obtained knowledge of IIM’s patent portfolio and that certain HPE products infringe IIM’s patents as of at least August 11, 2022, but has not ceased its infringing activities. HPE’s infringement of the ’226 Patent has been and continues to be willful

and deliberate. HPE also has knowledge of the ’226 Patent by way of this complaint and, to the extent it does not cease its infringing activities, its infringement is and continues to be willful and deliberate.

61. As a result of HPE’s direct and indirect infringement of the ’226 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for HPE’s infringement, but in no event less than a reasonable royalty for the use made of the invention by HPE, together with interest and costs as fixed by the Court.

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 8,214,608

62. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

63. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 8,214,608, titled “Behavioral monitoring of storage access patterns.” The ’608 Patent was duly and legally issued by the United States Patent and Trademark Office on July 3, 2012. A true and correct copy of the ’608 Patent is attached as Exhibit 22.

64. On information and belief, HPE has and continues to make, use, offer for sale, sell, and/or import certain products and services, including without limitation HPE’s Gen11 Proliant and Apollo Servers with “Smart Array SR” controllers (“Accused Products”), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the ’608 Patent. Identification of the Accused Products and asserted claims will be provided in Plaintiff’s infringement contentions disclosed pursuant to the Court’s scheduling order.

65. The Accused Products satisfy all claim limitations of one or more claims of the ’608 Patent. A claim chart comparing independent claim 1 of the ’608 Patent to exemplary Accused Products is attached as Exhibit 23.

66. HPE obtained notice of the ’608 Patent as of at least August 11, 2011, when Hewlett Packard Enterprise Development LP identified U.S. Patent App. Publication 2010/0115211, the publication of the application that issued as the ’608 Patent on an information disclosure statement submitted to the Patent Office in connection with its prosecution of U.S. Patent App. No. 13/099,046, which issued as U.S. Patent 8,396,999 to Hewlett Packard Enterprise Development LP. On information and belief, Hewlett Packard Enterprise Development LP is a subsidiary of HPE.

67. On August 11, 2022, IIM sent HPE the First Notice, which expressly identified the ’608 Patent. On August 2, 2024, IIM sent HPE the Second Notice, which also expressly identified the ’608 Patent. On January 17, 2025, IIM sent HPE the Third Notice, which again expressly identified the ’608 Patent and identified the accused ProLiant and Apollo products as requiring a license. The First, Second, and Third Notices all explained that HPE needed a license and requested a call to discuss a potential license.

68. HPE knowingly and intentionally induces infringement of one or more claims of the ’608 Patent in violation of 35 U.S.C. § 271(b). As of August 11, 2022 (or at least as of the time of the filing and service of this complaint), HPE has knowledge of the ’608 Patent and the infringing nature of the Accused Products. Despite this knowledge of the ’608 Patent, HPE continues to actively encourage and instruct its customers and end users (for example, through online instruction and other online publications cited in Exhibit 23) to use the Accused Products in ways that directly infringe the ’608 Patent. For example, HPE advertises that the accused HPE

Smart Array SR Gen11 Controllers include "HPE SR SmartCache," which provides a "[w]orkload [a]cceleration" that "benefits" the Accused Products' "[p]erformance." *See* Exs. 24 (https://support.hpe.com/hpesc/public/docDisplay?docId=sd00002175en_us&page=GUID-DAF96710-E8BA-43C0-B93F-3667592137E7.html), 25 (https://support.hpe.com/hpesc/public/docDisplay?docId=sd00002175en_us&page=GUID-D517D1DF-AA67-43D8-9621-7A96D10EE971.html). HPE also instructs its customers and end users on how to configure and use the Accused Products such as its Smart Array SR Gen11 in an infringing manner, including through instructing users how to "select drives" for use by HPE SR SmartCache. *See*, *e.g.*, *id.* [Ex. 24 (https://support.hpe.com/hpesc/public/docDisplay?docId=sd00002175en_us&page=GUID-DAF96710-E8BA-43C0-B93F-3667592137E7.html)]. HPE provides these instructions and materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. HPE also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '608 Patent, thereby specifically intending for and inducing its customers to infringe the '608 Patent through the customers' normal and customary use of the Accused Products.

69. HPE has also infringed, and continues to infringe, one or more claims of the '608 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '608 Patent, are especially made or adapted to infringe the '608 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. As of August 11, 2022 (or at least as of the time of filing and service of this complaint), HPE obtained knowledge of the '608 Patent and the infringing nature of the Accused Products. HPE has been, and currently is, contributorily infringing the '608 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the

identified hardware and/or software components and functionality in HPE's Gen11 Proliant and Apollo Servers with SmartArray controllers constitute a material part of the inventions claimed in the '608 Patent, are especially made or adapted to infringe the '608 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence cited above and in Exhibit 23.

70. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, HPE has injured Plaintiff and is liable for infringement of the '608 Patent pursuant to 35 U.S.C. § 271.

71. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the '608 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the '608 Patent during the relevant time period or were not required to mark during the relevant time period.

72. As described above, HPE obtained knowledge of IIM's patent portfolio and that certain HPE products infringe IIM's patents as of at least August 11, 2022, but has not ceased its infringing activities. HPE's infringement of the '608 Patent has been and continues to be willful and deliberate. HPE also has knowledge of the '608 Patent by way of this complaint and, to the extent it does not cease its infringing activities, its infringement is and continues to be willful and deliberate.

73. As a result of HPE's direct and indirect infringement of the '608 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for HPE's infringement, but in no event less than a reasonable royalty for the use made of the invention by HPE, together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that HPE has infringed, either literally and/or under the doctrine of equivalents, the ’929, ’714, ’961, ’226, and ’608 Patents;

b. A judgment and order requiring HPE to pay Plaintiff its damages (past, present, and future), costs, expenses, and pre-judgment and post-judgment interest for HPE’s infringement of the ’929, ’714, ’961, ’226, and ’608 Patents;

c. A judgment that HPE’s infringement of the ’929, ’714, ’961, ’226, and ’608 Patents has been willful and order requiring HPE to pay treble damages for willful infringement;

d. A judgment and order requiring HPE to pay Plaintiff compulsory ongoing licensing fees, as determined by the Court;

e. A judgment and order requiring HPE to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest and compensation for infringing products released after the filing of this case that are not colorably different from the Accused Products;

f. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys’ fees against HPE; and

g. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: October 9, 2026

Respectfully submitted,

*/s/ Brett E. Cooper*

Brett E. Cooper (NY SBN 4011011)
bcooper@bclgpc.com
Seth Hasenour (TX SBN 24059910)
shasenour@bclgpc.com
Jonathan Yim (TX SBN 24066317)
jyim@bclgpc.com
Drew B. Hollander (NY SBN 5378096)
dhollander@bclgpc.com
Scott E. Kolassa (NY SBN 4308409/CA SBN 294732)
skolassa@bclgpc.com
**BC LAW GROUP, P.C.**
200 Madison Avenue, 24th Floor
New York, NY 10016
Phone: 212-951-0100

***Attorneys for Plaintiff Innovations In Memory LLC***